## STATE v. AYARS.
No. 6033.

Circuit Court, Dade County, Criminal Appeal.

June 14, 1967.

Walter E. Gwinn, Miami, for appellant.

Richard E. Gerstein, State Attorney, John P. Durant, Assistant State Attorney, for appellee.

HARVIE S. DuVAL, Circuit Judge.

This is an appeal from a conviction in the metropolitan court of Dade County entered by the Honorable Robert M. Deehl, Metropolitan Judge.

The appellant was charged with aiding and abetting in the commission of a violation of a metro ordinance, to wit: reckless driving. He was not represented by counsel, plead not guilty, and upon conclusion of the trial was found guilty by the court. He was ordered to pay a fine of $200 and in default of payment to serve 20 days in the county jail.

The state presented one witness, a deputy sheriff, who testified that while he was checking a building at Southwest 97th Avenue and Sunset Drive at about 11:56 p.m. on June 9, 1966 he observed a car across the street leave a stop sign spinning rubber, approximately thirty feet. He followed the vehicle south on 97th Avenue to Snapper Creek Drive where the driver made a right turn going into the wrong lane. The vehicle went northwest to 99th Court where it ran a stop sign and made a left turn. The vehicle then continued south on 99th Court to 84th Terrace where the driver made a right turn and pulled over.

The officer testified that he placed the driver under arrest and also placed the defendant under arrest without relating what charges were made. However, the complaint charging appellant with aiding and abetting is a part of the record. The officer did not testify with respect to any excessive speed by the driver of the vehicle, or testify as to any act by the driver which endangered the safety of any person or property, nor did he testify as to any act of the appellant which could be construed as aiding or abetting the driver in his alleged reckless driving.

The area of the alleged reckless driving was in a rather remote part of the county. There was no testimony offered by the state to indicate the presence of any other vehicles or persons in a position to be endangered by the driver's alleged improper driving.

Leaving a stop sign, spinning rubber, is not reckless driving. Making a right turn and going into the wrong lane, in itself, is not reckless driving. Running a stop sign, in itself, is not reckless driving. Neither is the combination of the foregoing acts reckless driving — unless there was evidence to show gross and flagrant

negligence, demonstrating reckless disregard of human life, or the safety of persons exposed to its dangerous effects. In this case there was a total absence of evidence upon which the trial court could have based a finding that any of the driver's acts, under the circumstances then existing, were such as to have caused any one or anything to be endangered.

Since there could have been no proper finding that the driver was guilty of reckless driving, there could have been no finding that the appellant was guilty of aiding and abetting. The court erred in not directing a verdict of acquittal at the close of the state's case.

The trial court upon the conclusion of the state's case not only failed to direct a verdict of acquittal but proceeded to have the appellant, unrepresented by counsel, testify without advising him of his rights as a defendant. Such failure was sufficient error to warrant a reversal if standing alone.

However, if there had been sufficient evidence to sustain a finding of guilt of the driver, and the court had properly advised the unrepresented appellant of his rights, the conviction still could not stand — because there was a total absence of any testimony upon which a conviction of aiding and abetting could be sustained.

Appellant stated that as soon as he saw the red light on the officer's car, he told the driver to pull over and stop the car which the driver did. He testified that the officer told him that he was going to give him a ticket for aiding and abetting. Appellant then stated that he asked him what for, and the officer stated, "When you noticed he was speeding, you should have reached over and pulled the key out of the ignition and turned it off." Appellant commented, "I never heard of anything like that." To that response, the court replied —

"That is the law."

\*      \*      \*

"When a person is driving in a reckless manner, the law says you must take every step you can to prevent him from doing so. If you say: 'Stop the car and let me out' and he will not let you out . . ."

*The Defendant:* "I told him to stop. I guess that is why he stopped."

*The Court:* . . . "You are supposed to reach over and take the key out.".

Such is not the law. There is no law in Florida requiring a passenger in a motor vehicle to pull the key out of the ignition whenever the passenger believes the driver is exceeding the speed limit or is driving carelessly or recklessly. To do so, particularly in automobiles with power steering and brakes, may be a far more dangerous act than leaving it in.

If such was the law, just think of the carnage which would result on our high speed expressways and turnpikes by passengers suddenly pulling keys, because in their judgment the driver may be violating a metro traffic ordinance and upon their failure to stop the automobile each passenger would be charged and possibly fined or jailed because of his failure to so act. If this was the law, Dade County tax problems would be greatly relieved by the great new source of revenue resulting from passenger arrests.

The trial judge was obviously laboring under the misconception that all passengers in motor vehicles, spectators, passersby, etc., are guilty of aiding and abetting any violation of a metropolitan ordinance committed in their presence, merely because they are present and fail to actively attempt to intervene and stop the violation. Such is not the law.

In order for one to be guilty of aiding and abetting in the commission of an offense that person must be a participant in the unlawful design of the perpetrator of the offense and the offense must be within the compass of the original intention or natural and reasonable consequences of the acts aided or encouraged. Further, the aidor and abettor must have given assistance to the actual perpetrator at the time of the commission of the offense. Further, in order to hold one person accountable for the crime of another, there must be some communication between the persons involved sufficient to establish criminal connection between them — and the commission of a crime by the first mover's counsel, procurement or instigation must be proven beyond and to the exclusion of every reasonable doubt. Lee v. Tucker, 37 So.2d 582. But,

> "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aidor or abettor or a principal in the second degree nor is mere mental approval sufficient, nor passive acquiescence or consent . . ." *Oaths and Standard Charges to Jury in Civil, Eminent Domain and Capital Cases in Florida,* p. 163.

The Second District Court of Appeal in Newton v. State, 178 So.2d 341 said —

"An accomplice is one who knowingly, voluntarily, and with common intent unites with others in the commission of the crime. * * *

"Mere presence at the scene of the crime did not make him an accomplice in the absence of any evidence that he took part in the commission of the crime either by way of aiding or by way of encouraging its commission."

Further, even cognizance, acquiescence or approval is insufficient to convict for any offense. Cleaver v. U. S., 237 Fed. 2d 766.

The word "aid" itself means to assist or to help another. This must be done in a positive way.

"In order to aid and abet another to commit a crime it is necessary that the accused wilfully associate himself in some way with the criminal venture, and wilfully participate in it as he would in something he wishes to bring about." *Federal Jury Practice and Instructions*, 91.

In this case there is not one shred of evidence to show that the appellant actively participated in any driving offense condemned by the law. There is no evidence to show that he aided the perpetrator of the alleged offense. Passive acquiescence or even approval does not constitute the offense of aiding and abetting.

It is obvious by the record that the trial judge had reviewed the appellant's driving record and had the record in front of him during the trial. The record of the appellant was not good, but regardless of whether or not the appellant's previous driving record was good or bad the trial court had no business reviewing a record not in evidence prior to rendering his judgment.

This was also error sufficient for reversal. In reviewing the manner in which this trial was conducted, the unwarranted comments made by the trial judge during the very short trial (four pages of testimony) and the severity of the sentence, it is abundantly clear the trial judge permitted himself to be prejudiced by inspecting the appellant's prior record before rendering his judgment.

The conviction is reversed, with costs assessed to the county.